Benjamin Brenner, J.
This is an action by a wife to declare invalid both a Mexican decree of divorce procured by the bus-band and bis subsequent marriage to tbe codefendant (second wife) in Connecticut. Tbe latter requests an adjudication of her rights as well as alimony and counsel fee. The husband has apparently tired of the second wife and is presently living alone, but he supports both wives. There are two children, now grown, of the first marriage. The second marriage has produced no issue.
The plaintiff wife has established upon trial that the Mexican divorce decree was procured after a few hours’ stay in Mexico by the defendant husband following constructive service of the proceeding on the plaintiff and is therefore entitled to a declaration of its nullity (Baumann v. Baumann, 250 N. Y. 382; Imbrioscia v. Quayle, 278 App. Div. 144; Alfaro v. Alfaro, 5 A D 2d 770; Ruderman v. Ruderman, 193 Misc. 85, affd. 275 App. Div. 834).
The husband’s marriage to the codefendant in Connecticut, following his procurement of the Mexican decree is thus a void marriage both under New York law (Domestic Relations Law, § 6; Whittleton v. Whittleton, 3 Misc 2d 542) and Connecticut law (Poltz v. Poltz, 15 Conn. S. 75; Application of Blackwell, 5 Conn. S. 190; Chetelat v. Chetlat, 4 Conn. S. 209; Ringhoffer v. Ringhoffer, 1 Conn. S. 35). Hence the issue raised as to which *608 law applies becomes academic. (It is still unsettled which State controls the validity of a marriage performed following procurement of an invalid Mexican decree; some authorities hold that it is the State of domicile of the parties at the time of the marriage [Cunningham v. Cunningham, 206 N. Y. 341; Bell v. Little, 204 App. Div. 235, affd. 237 N. Y. 519; Sodero v. Sodero, 56 N. Y. S. 2d 823; Matter of Caeti, 207 Misc. 353]; others hold that it is the State wherein the marriage is performed [Brown v. Brown, 282 App. Div. 726, affd. 306 N. Y. 788; Apelbaum v. Apelbaum, 7 A D 2d 911].)
I find the codefendant’s affirmative defense, namely, that the wife is estopped because of her ■ acquiescence in the Mexican decree, to be unfounded and untenable. Indeed, if acquiscence and consent by her were the fact, she could well have appeared in the Mexican proceedings and thereby made the Mexican decree invulnerable to any attack. (Sherrer v. Sherrer, 334 U. S. 343; Coe v. Coe, 334 U. S. 378; Johnson v. Muelberger, 340 U. S. 581; Laff v. Laff, 4 A D 2d 874, affg. 5 Misc 2d 554; Caswell v. Caswell, 111 N. Y. S. 2d 875, affd. 280 App. Div. 969; Fricke v. Bechtold, 8 Misc 2d 844; Costi v. Costi, 133 N. Y. S. 2d 447.) On the contrary, I find that she was unaware of any change in her marital status while it was the codefendant herself who actively sought to terminate it and who possibly prompted the procurement of the Mexican decree.
Nor is there any validity in the affirmative defense that the wife entered into a collusive arrangement with her husband to prosecute the suit at bar. It is, of course, possible for a wife to plot with her husband for continued legal recognition of her own marriage by upsetting an invalid Mexican divorce and a questionable remarriage in order to rid the husband of a second marriage which has become as undesirable to the husband as it was to the wife. But if there was such a plot, its effect would seem salutary and in the public interest even if neither marriage can be saved, for the first marriage was performed without legal blemish and in all innocence when the parties made their first venture in matrimony and it produced issue who undoubtedly have some stake in the continued marital status of their parents. A plot to uphold such a marriage does not shock the public conscience. All this cannot be said for the second marriage, performed as it was under a cloud of illegality of which the codefendant may even have been aware.
In any case, the defenses of bad faith, collusion and estoppel are not available as to a decree of divorce void from its inception, even where there was knowledge or participation in the pro *609 curement of said divorce by tbe one seeking to have it declared invalid (Landsman v. Landsman, 302 N. Y. 45; Davis v. Davis, 279 N. Y. 657; Gruttemeyer v. Gruttemeyer, 285 App. Div. 1185; Jackson v. Jackson, 274 App. Div. 43; Honig v. Honig, 267 App. Div. 908; Laff v. Laff, 5 Misc 2d 554, affd. 4 A D 2d 874, supra). They are not even available when charged against the spouse who actually obtained the divorce (Caldwell v. Caldwell, 298 N. Y. 146; Alfaro v. Alfaro, 5 A D 2d 770, supra; Liebman v. Liebman, 8 Misc 2d 904). Hence they cannot be available against a nonappearing spouse where, as here, the divorce was obtained on constructive service {Jackson v. Jackson, supra, p. 45).
The codefendant’s prayer for alimony pursuant to section 1140-a of the Civil Practice Act is addressed to the court’s discretion. It presents moral problems which always affect a discretionary disposition. The codefendant may not have been aware that the Mexican decree and her subsequent Connecticut marriage were questionable. However, her relations with the husband, while perhaps not surreptitious, nevertheless preceded these events and may even have existed while the codefendant was herself still bound to, though estranged from, her own first husband. In these circumstances she cannot, as was observed by Judge Hill in Marum v. Marum (10 Misc 2d 695, 700) expect more than minimal support.
What is more, section 1140-a of the Civil Practice Act, which permits support to a wife whose marriage is annulled, presupposes an invalid marriage entered into innocently and in good faith (1940 Report of N. Y. Law Rev. Comm., p. 245), which the codefendant in the case at bar has not fully satisfied the court was the fact. She is thus in no position to insist upon the standard of living formerly supplied to her by the husband as a basis for the discretionary allowance under that section, even if gifts of furs, jewels and expensive vacations, etc., be excluded from such standard. In the circumstances here presented, and considering the husband’s means, income and present support payments to the wife, I find the codefendant entitled to but nominal support and hereby fix same at $35 weekly. Her attorney has received ample compensation as already provided by this court. The plaintiff’s attorney, however, is entitled to a counsel fee of $400, payable within 20 days following entry of the within decree.
There is no authority for the issuance of an injunction against the codefendant as to the latter’s use of the defendant’s surname and in holding herself out as his wife (Lowe v. Lowe, 265 N. Y. 197; Somberg v. Somberg, 263 N. Y. 1; Baumann v. *610 Baumann, 250 N. Y. 382, supra; Chesny v. Chesny, 278 App. Div. 586; Liebman v. Liebman, 8 Misc 2d 904, supra). The prayer for such, injunctive relief is denied.
All motions made to dismiss the complaint are denied. The codefendant’s counterclaims are dismissed. Plaintiff is entitled to judgment as prayed for, except as herein indicated.
Submit findings and conclusions.