HELEN F. SITTERLY, Plaintiff, *v.* LEWIS G. SITTERLY, Defendant.

Supreme Court, Equity Trial Term, Herkimer County, November 8, 1945.

*Francis J. Moore* for plaintiff.

*George G. Fiesinger* for defendant.

SEARL, J. The action is for absolute divorce. Plaintiff and defendant married at Ilion, Herkimer County, New York, on August 10, 1935; plaintiff has at all times been a resident of the State of New York. There are two children of the marriage, who are in the custody of their mother. The parties separated in the summer or fall of 1943. The husband was employed in the plant of the Remington Typewriter Company at Ilion, New York. One Mary McRorie worked in his crew.

Late in December, 1943, defendant drove his motor car to Las Vegas, Nevada. Upon arriving there he operated a bus and performed work as a garage mechanic. During the entire time defendant was in Nevada he lived in a trailer or in a tourist camp. On or about March 28, 1944, plaintiff was served personally at Ilion, New York, with a summons and complaint in an action for divorce on grounds of cruelty. The action was instituted in the Eighth Judicial District Court, County of Clark, State of Nevada. Plaintiff neither answered nor appeared. On or about May 8, 1944, defendant was granted a decree of divorce in Clark County, Nevada. Later defendant took employment at the Douglas Long Beach plant in California, where Mary McRorie was also employed. About August 1, 1944, both started east by motor car, arriving in Ilion, New York, August 15th. They entered into a ceremonial marriage on August 17th, and the next day defendant entered the armed forces, being discharged December 9, 1944.

The complaint challenges the jurisdiction of the Nevada court. Defendant's answer alleges that he established a new domicile in Nevada and thereafter moved to California.

The solution of the issue permits of but one answer. Did defendant drive his car to Nevada with intent of making that State his home or is such claim a sham? His reason, as presently urged, is that his health was poor. There was some inference but no direct or convincing evidence that defendant suffered from weak lungs.

The sojourn in Nevada bears all the earmarks of a simulated and not a bona fide domicile. Defendant consulted attorneys very soon after his arrival there; before he left New York State he was under the jurisdiction of Draft Board No. 553, at Rochester. He notified the board he was leaving New York State, but his papers were never transferred to Nevada. After being in

Las Vegas a month and a half, defendant moved on to California, then returned to Las Vegas for another two months. His move to California was to La Verne, 290 miles from Las Vegas, Nevada. From there he commuted forty-five miles daily to Long Beach, California, where he worked. Significantly, the same Mary McRorie had arrived in California and worked where defendant did at the Douglas Long Beach plant.

The court permitted defendant to testify, over the objection of plaintiff, that at the time he lived in California and at the time of trial he intended to make California his residence. Intention of residence has always been an element properly to be considered. " Intention is a fact. It cannot be seen or heard. It is generally not susceptible of direct proof." (33 C. J., Intention, p. 169.) " It is always a distinct and material fact to be established." (*Matter of Newcomb,* 192 N. Y. 238, 251, 252.) This case holds that declarations of intention are not self-serving " in an improper sense, unless they are made with intent to deceive." Although competent, the weight to be given such declarations is for the court to determine. It is questionable whether this claim of intention is of any value to defendant. In the first place he was living at time of trial in Richfield Springs, New York. Secondly, his artistry of intention is sadly mutilated when in his letter to the plaintiff of August 30, 1944, scarcely two weeks after his ceremonial marriage of August 17th, he pleads with the plaintiff: " I know that regardless of what happens to me, I am going to Nevada after I get out and divorce her." The true purpose of his first trip to Nevada may well be reflected from his avowed purpose of a second trip.

In arriving at a conclusion in the instant litigation the court recognizes its duty to " accord *prima facie* validity to the Nevada decree." However, the plaintiff has met the burden " of impeaching the foundation of the Nevada decree on the jurisdictional prerequisite of *bona fide* domicil." (*Esenwein* v. *Commonwealth,* 325 U. S. 279, 280–281.) The facts permit of no other finding.

The last opinion in *Williams* v. *North Carolina* (325 U. S. 226, 232) fully recognizes both the power and duty of the courts of this State to determine the question of domicile. In other words, as indicated in the majority opinion " To permit the necessary finding of domicil by one State to foreclose all States in the protection of their social institutions would be intolerable." In *Matter of Lindgren* (293 N. Y. 18), decided after rendition of the first and before the second decision in the *Williams* case (*supra*), Judge LEWIS, writing for a majority of the court,

affirmed a finding of the trial court to the effect that neither party was a domiciliary of Florida, as to confer jurisdiction.

A previous decision in *Matter of Holmes* (291 N. Y. 261) held that full faith and credit might be denied to a Nevada decree, where the plaintiff was not domiciled in that forum, the defendant residing in New York State. There the court (p. 272) cited *Lefferts* v. *Lefferts* (263 N. Y. 131) referring to "a Nevada decree * * * granted without personal service of the defendant." This reference is applicable to a question arising in the case at bar. The instant plaintiff was served personally in the State of New York. Defendant urges in his brief that "the summons and complaint was duly and personally served on the plaintiff in New York State." In *Fischer* v. *Fischer* (254 N. Y. 463) personal service was made in New York State in a suit sought to be instituted in Nevada. Plaintiff. returned to New York after obtaining a decree purporting to dissolve the marriage. The decree was held to be invalid. It is apparent that when the term "personal service" is used, the reference is to personal service only within the State attempting to exercise jurisdiction over the person.

A decree of divorce is granted to the plaintiff in the instant action. The decree shall direct the husband to pay to the wife for her support and that of the two infant children of the parties $16 per week. Plaintiff is granted custody of the children, with privilege to defendant of visitation at all reasonable hours. Plaintiff is awarded $150 as counsel fees, together with costs of the action, to be taxed by the clerk.