■ JUTTA ROSENFELD, Respondent, v GEORGE ROSENFELD, Appellant.— Order, Supreme Court, New York County, entered November 5, 1979, which denied defendant's motion to dismiss the complaint, modified, on the law, to direct an immediate trial on the limited issue of the validity of the Arkansas divorce, without costs. The dissent in its review of the pertinent facts sets forth strong policy considerations. However, the prevailing law is otherwise, and under the constraint of *Jackson v Jackson* (274 App Div 43); *Landsman v Landsman* (302 NY 45); *Fischer v Fischer* (254 NY 463), and others, we feel that any reconsideration of this rule should be left to the Court of Appeals. Concur—Fein, J. P., Sullivan, Ross and Carro, JJ.

Silverman, J., dissents in a memorandum as follows: I would affirm the order appealed from, denying the motion to dismiss the complaint. Plaintiff wife obtained a divorce in Arkansas from her previous husband. Thereafter, she and defendant were married and have lived together for 20 years. She now sues for a divorce. Defendant moved to dismiss the action pursuant to CPLR 3211 (subd [a], par 2), lack of subject matter jurisdiction, because defendant says the wife's Arkansas divorce was invalid in that she had not fulfilled the residence and domicile requirements of Arkansas. As defendant says, "Since I wished to marry plaintiff, I 'assisted' in obtaining the divorce, and choosing the attorney * * * The hard fact is that we both spent *only one day* in Arkansas." Plaintiff says, "that the defendant herein did much more than simply 'assist' in arranging my 1958 Arkansas Divorce. The defendant, in fact, [and this is not denied] made all the arrangements for my 1958 Arkansas Divorce; he hired my attorney; he paid my counsel fees and all of my expenses; he accompanied me to Arkansas for the divorce." Thus, it appears that the parties have lived together for over 20 years as husband and wife, after a ceremonial marriage between them, on the strength of a divorce that the present defendant actively participated in obtaining. In the circumstances, I think it would be grossly unjust to permit the husband to deny the validity of that divorce and remarriage. As Justice Hortense Gabel said at Special Term in denying the motion, "To rule otherwise, permitting defendant to assert the invalidity of the decree, would allow him to occupy a position in direct contradiction to his own past actions in helping to secure that divorce and subsequently marrying plaintiff, and to avoid the responsibilities and obligations incurred in over twenty years of married life. Therefore, based upon defendant's direct participation in and knowledge of the circumstances concerning plaintiff's prior divorce, the defendant is estopped from attacking the validity of that decree." In *Krause v Krause* (282 NY 355), a husband who was a party to an invalid divorce was held estopped as against his subsequent wife to contest the

validity of that divorce. The court said (p 357): "The question upon this appeal, therefore, depends upon whether defendant husband may now be heard to assert in this action, brought by his second 'wife,' that the judgment of divorce which he sought and obtained failed of its purpose and thereby did not give to the defendant that freedom to remarry which he appeared to possess by virtue of said judgment." The court answered that question in the negative. It seems but a short step to extend the ruling of that case to the present one, where the husband, although not formally a party to the allegedly invalid divorce, actively participated in obtaining it for the purpose of marrying a party of that divorce. Nevertheless, I recognize that the prevailing appellate authority has made precisely that distinction and has permitted the second "husband", who was not a party to the invalid divorce of his "wife" from her former husband, to attack the validity of that divorce. (*Jackson v Jackson*, 274 App Div 43; see, also, *Fischer v Fischer*, 254 NY 463.) And the rule has been pretty much followed since then. But in the 32 years since the decision of this court in *Jackson v Jackson (supra)*, there have been revolutionary changes in both the matrimonial laws of New York and the mores and values of our society. One need only consider the change in our law from the time when adultery was the only ground for divorce in New York to the present "no-fault" divorce (Domestic Relations Law, § 170, subd 6). On questions of public policy, we may look to "prevailing social and moral attitudes of the community" in "this sophisticated season." (*Intercontinental Hotels Corp. [Puerto Rico] v Golden*, 15 NY2d 9, 14; see, also, *Ehrlich-Bober & Co. v University of Houston*, 49 NY2d 574, 580.) In the present climate of opinion and scale of values, I think the injustice of permitting the husband to escape his obligations to the woman with whom he has lived as his wife for over 20 years, after a marriage and divorce obtained in the circumstances here, outweighs the conflicting policy against requiring a man to support a woman to whom he is not legally married. It is time that the rule of the *Jackson v Jackson (supra)* case is reconsidered, both by this court and by the Court of Appeals.